# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

TRUMAN JONES,

    Defendant.

NO. 3:16-CR-127

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me are pretrial motions filed by Defendant Truman Jones ("Jones") to suppress (Doc. 181), to dismiss Count One of the Indictment (Doc. 183), and to dismiss Count Nine of the Indictment (Doc. 221).[1] For the reasons that follow, the motions will be denied.

## I. Background

Jones and co-Defendants Al Dunlap ("Dunlap"), Jaquan Henderson ("Henderson"), Na'Deardra Mayhams ("Mayhams"), Davon Beckford ("Beckford"), and Stephanie Walter ("Walter") were indicted by a grand jury on May 17, 2016. (*See* Doc. 23, *generally*).[2]

The events underlying the charges against Jones are as follows:

On or about January 20, 2016, the Wilkes-Barre Police Department ("WBPD") provided the Bureau of Alcohol, Tobacco and Firearms ("ATF") with information regarding Jones. (*See* Doc. 234-1, 9). In particular, the WBPD had used a confidential informant ("CI") to make three controlled purchases from Jones during the previous two (2) months. (*See id*.). During those controlled buys, the CI was kept under constant surveillance and searched both before and after the purchases. (*See*

---

[1]     Jones has also filed a motion to sever his trial (Doc. 179). At the hearing on his suppression motion, he requested that the severance motion be held in abeyance. I will do so.

[2]     Henderson, Beckford, and Walter have since pled guilty. (*See* docket, *generally*).

*id*.). None of those transactions involved premises located at 163 Charles Street.

On January 27, 2016, the WBPD, ATF, and Pennsylvania State Police ("PSP") used the CI to make a controlled buy of two (2) bricks of heroin from Jones. (*See id*.). The transaction took place under surveillance in a store parking lot. (*See id*. at 10). Following the sale, Jones was observed by a surveillance unit driving away in a Chevrolet Impala to 163 Charles Street in Wilkes-Barre. (*See id*.). 163 Charles Street is a single building with four separate doors located in the front of the house. (*See id*. at 15). Although law enforcement officials observed Jones enter the building, testimony at the November 30, 2018 hearing confirmed that they could not tell from their vantage point which apartment Jones entered. Law enforcement officials searched the CI and vehicle after the transaction, and did not locate any other contraband, including pre-recorded agent cashier funds. (*See id*.). The purchased substance tested positive for heroin. (*See id*.).

The WBPD, ATF, and PSP used the CI to make another controlled buy of two (2) bricks of heroin from Jones on February 3, 2016. (*See id*.). Prior to the transaction, a surveillance unit was positioned outside 163 Charles Street. (*See id*.). The same Chevrolet Impala arrived at 163 Charles Street and three people exited the vehicle. (*See id*.). Jones was seen leaving from the second door from the left of 163 Charles Street with an unidentified male. (*See id*.). Jones was photographed leaving that unit. (*See id*.). Jones entered the Chevrolet Impala and drove to the previously determined meeting location. (*See id*.). As with the January 27, 2016 transaction, the controlled purchase took place in a store parking lot. (*See id*.). Law enforcement officials searched the CI and vehicle after the transaction, and, besides the contraband which tested positive for heroin, did not locate any other contraband. (*See id*. at 12).

Based on those events, law enforcement applied for an arrest warrant for Jones, as well as a search warrant for the second unit from the left at 163 Charles Street. (*See id*. at 13-18). Evidence to be searched for and seized included packaging materials and paraphernalia, controlled substances, currency, safes and contents, firearms, and

ammunition. (*See id*. at 16-17). As developed at the suppression hearing, of the three controlled buys involving Jones prior to ATF's involvement in the case, Jones was observed using 7 North Meade Street, Wilkes-Barre, Pennsylvania on one occasion. Jones owned the house at that address. Law enforcement officials also had several complaints that 7 North Meade Street was connected to drug activity. Prior to January 27, 2016, law enforcement officials were unaware of Jones' connection to 163 Charles Street and they had no complaints about that residence. Jones did not own that property.

On February 9, 2016 at 11:08 a.m., Magistrate Judge Karoline Mehalchick issued the search warrant for the second unit from the left at 163 Charles Street. (*See id*. at 2). That afternoon, another controlled purchase was arranged from Jones. Surveillance units at 163 Charles Street followed and arrested two women who traveled from the residence to deliver the heroin.

Law enforcement officials executed the search warrant for 163 Charles Street the same day. (*See* Doc. 234-2, 1). Jones was found therein and arrested. Agents recovered approximately $4,462, two loaded firearms, and ammunition for both firearms from inside a bedroom. In a side-room, officers located approximately 62 grams of unpackaged heroin, 472 packets of heroin, packaging material, and 75 grams of marijuana.

A search of a second bedroom revealed approximately five (5) grams of unpackaged heroin, 150 packets of heroin, 44 grams of cocaine/cocaine base, packaging material, a loaded firearm, and ammunition.

At the conclusion of the search, agents left an inventory of the items seized. (*See* Hr'g Ex. "3").

Thereafter, Jones signed an "Advice of Rights and Waiver" and gave a recorded post-arrest interview. (*See* Hr'g Exs. "4"-"5").

Based on these events, Jones was charged in the Indictment with: (1) conspiracy to distribute heroin and cocaine base in violation of 21 U.S.C. § 846 (Count One); (2)

distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (Counts Two - Seven); (3) possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Count Eight); and (4) possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. 924(c) (Count Nine). (*See* Doc. 23, *generally*).

Now, Jones has filed several pretrial motions. The Government filed an omnibus brief in opposition. A hearing was held on the suppression motion on November 30, 2018. The pretrial motions are thus ripe for disposition.

## II. Discussion

Jones, as stated, has filed pretrial motions to dismiss certain Counts of the Indictment and to suppress evidence. I will address the issues in that order.

**A. Dismissal.**

Jones seeks dismissal of Counts One and Nine of the Indictment. Neither Count will be dismissed.

**1. Count One.**

Count One of the Indictment charges Jones, along with Dunlap, Henderson, Mayhams, Beckford, and Walter, with conspiracy to distribute heroin and cocaine base in violation of 21 U.S.C. § 846. (*See* Doc. 23, Count One). Jones argues that in the discovery provided by the Government, there is nothing that connects him to Dunlap other than the fact that the two resided in the same apartment. (*See* Doc. 184, 3).

In opposition, the Government notes that a Rule 29 motion for judgment of acquittal is not appropriate until at least the close of its case, and that in the pretrial context it must only satisfy the requirements of Federal Rule of Criminal Procedure 7(c). (*See* Doc. 234, 8-9). Those requirements, the Government contends, are satisfied in the Indictment here, as the charging language tracks the operative statutes at issue. (*See id*. at 9). Furthermore, pointing to Jones' argument regarding the lack of a conspiracy between him and Dunlap, the Government emphasizes that at trial it will have "multiple avenues to prove the existence of a conspiracy, whether between Jones and Dunlap or Jones and others, including the unnamed individuals he used to

4

facilitate his trafficking and his co-defendants (including the three who already pleaded guilty)." (*Id*. at 10).

Federal Rule of Criminal Procedure 7(c) sets forth that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion." Fed. R. Crim. P. 7(c). An indictment is facially adequate if it "'(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (quoting *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007)). "Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of the violation under the statute, and specifies the time period during which the violations occurred." *Id*. (citing *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005)). In other words, the indictment may not be dismissed "unless it is so defective that it does not, by any reasonable construction, charge an offense" under the statute at issue. *Vitillo*, 490 F.3d at 324 (internal citation omitted).

The Indictment satisfies the requirements imposed by Rule 7(c), so it is not defective. Count One first sets forth the charging statute: 21 U.S.C. § 846. "The essential elements of a drug distribution conspiracy under 21 U.S.C. § 846 are: '(1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal.'" *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (quoting *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)). Count One of the Indictment tracks the statutory language and charges that from on or about November 10, 2015 through May 6, 2016, in Luzerne County and elsewhere, Jones and his co-Defendants knowingly and intentionally combined, conspired, and agreed with persons known and unknown to the grand jury to distribute and possess with

5

intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (*See* Doc. 23, Count One). Count One thus identifies the existence of a drug conspiracy, the operative time of the conspiracy, and the statute allegedly violated. Because Count One "informs the defendant of the statute he is charged with violating, lists the elements of the violation under the statute, and specifies the time period during which the violations occurred," it satisfies the requirements of Rule 7(c), *Huet*, 665 F.3d at 595, and will therefore not be dismissed. *See, e.g., United States v. Woodley*, No. 13-113, 2016 WL 323676, at *3-4 (W.D. Pa. Jan. 25, 2016) (denying motion to dismiss heroin conspiracy distribution count); *United States v. Blondell*, No. 12-145, 2013 WL 12214142, at *3 (M.D. Pa. May 30, 2013) (denying motion to dismiss count charging a violation of § 846).

### 2. Count Nine.

Jones also seeks dismissal of Count Nine of the Indictment charging him with possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c). (*See* Doc. 23, Count Nine). According to Jones, the discovery that has been provided to him does not support the offense charged. (*See* Doc. 222, 1). Jones challenges whether he possessed the firearm in furtherance of a drug trafficking crime. (*See id.*). More particularly, Jones contends that the facts do not establish that he "intended to use the firearm at anytime, for any reason or in any way related to a drug trafficking crime. The firearms were allegedly found in a locked safe under a bed." (*Id.* at 3). Jones also points to a lack of evidence "that during any of this alleged distributions that he possessed a firearm." (*Id.*).

The Government argues that Jones' challenge to Count Nine fails for reasons similar to those set forth above with respect to Count One, namely that the Indictment provides sufficient notice of the crime charged and the allegations he faces, while avoiding potential double jeopardy issues. (*See* Doc. 234, 11). The Indictment, says the Government, identifies the date and location where the firearms were possessed, identifies the firearms by make, model, and serial numbers, and sets forth the

underlying drug trafficking crime. (*See id*.). The Government thus concludes that this satisfies the mandates of Rule 7(c). (*See id*.).

The firearm possession in furtherance of drug trafficking charge will not be dismissed. Count Nine enumerates the charging statute: 18 U.S.C. § 924(c). "The essential elements of a violation of 18 U.S.C. § 924(c) . . . are (1) the defendant committed either the crime of conspiracy to distribute and possess with intent to distribute a controlled substance or the crime of possession with intent to distribute; (2) the defendant knowingly possessed a firearm; and (3) the defendant knowingly possessed the firearm in furtherance of the crime of conspiracy to distribute or in furtherance of the crime of possession with intent to distribute.'" *Bobb*, 471 F.3d at 496. The Indictment tracks the statutory language and charges that on or about February 9, 2016, in Luzerne County, Jones knowingly possessed a Glock 22, .40 caliber pistol, Serial Number UWW550, and a Smith & Wesson Model 65-2 .357 caliber revolver, Serial Number 37151, in furtherance of his knowing and intentional possession with intent to distribute heroin. (*See* Doc. 23, Count Nine). As Count Nine is facially sufficient, it will not be dismissed. *See, e.g.*, *United States v. McMillan*, No. 15-305, 2018 WL 1035776, at *4 (M.D. Pa. Feb. 23, 2018) (denying motion to dismiss § 924(c) charge and noting that "[t]he separate issue of whether [the defendant] in fact possessed the handgun on the day in question is the province of the jury, not a pretrial matter.").

**B.  Suppression.**

Jones also seeks to suppress evidence seized from his residence. Although Jones raised several challenges to the lawfulness of the February 9, 2016 search of the Charles Street residence in his motion, Jones clarified at the suppression hearing that he is challenging only the sufficiency of the warrant. Thus, Jones' claims regarding

7

law enforcement obtaining a warrant to search a different address[3] and an alleged violation of the knock and announce rule have been abandoned. Accordingly, my discussion is limited to whether the warrant was sufficiently particularized and whether probable cause existed to the "residential unit that is accessed by the second door from the left" located at 163 Charles Street.

The Fourth Amendment guarantees that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S. Ct. 3304, 87 L. Ed. 2d 381 (1985).

As to Jones' argument to the particularity of the warrant, "[u]nder the Fourth Amendment, 'a warrant may not be issued unless . . . the scope of the authorized search is set out with particularity.'" *United States v. Fattah*, 858 F.3d 801, 819 (3d

---

[3] Although Jones is correct that law enforcement officers obtained a search warrant for 7 N. Meade Street on February 8, 2016, the evidence at the suppression hearing demonstrated that law enforcement officials obtained a corrected warrant for the second from the left residential unit at 163 Charles Street before it was searched. Jones did not appear to dispute this point following the hearing. Furthermore, insofar as a copy of the 7 North Meade Street warrant was left following the search of 163 Charles Street, this error is not a basis for suppression in the matter *sub judice*. *See* Fed. R. Crim. P. 41(f) ("The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."). "The procedural steps set forth in Rule 41 are 'essentially ministerial in nature.'" *United States v. McMillion*, No. 08-205, 2011 WL 9110, at *4 (M.D. Pa. Jan. 3, 2011) (quoting *United States v. Hall*, 505 F.2d 961, 963 (3d Cir. 1974) (discussing Rule 41(d), the precursor to Rule 41(f))). "[A]bsent a showing of prejudice, a motion to suppress should not be granted." *Id*. (quoting *Hall*, 505 F.2d at 964). Such a showing was not made here.

Cir. 2017) (quoting *Kentucky v. King*, 563 U.S. 452, 459, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011)). Particularity "prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927). It has "three components: 'First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the items to be seized by their relation to designated crimes.'" *United States v. Perez*, 712 F. App'x 136, 138-39 (3d Cir. 2017) (quoting *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013)). "Ultimately, the particularity requirement intends that 'nothing is left to the discretion of the officer executing the warrant.'" *Id*. (quoting *Marron*, 275 U.S. at 196, 48 S. Ct. 74).

The warrant for 163 Charles Street meets these requirements. (*See* 234-1, 16-17). In particular, the warrant authorized seizure of: packaging material and paraphernalia; controlled substances; financial records; currency; contents of safes; firearms and ammunition; gang affiliation evidence; electronic devices use to store evidence related to drug trafficking; keys for storage units related to drug trafficking; travel documents; and photographs of Jones and his coconspirators, profits, or assets. (*See id*.). These items bear a connection to drug trafficking and the warrant was not unconstitutionally general or overbroad. *See*, *e.g.*, *United States v. Ramsey*, No. 11-310, 2013 WL 6388518, at *4-5 (M.D. Pa. Dec. 5, 2013) (denying motion to suppress based on claim that the warrant was a "general warrant" that failed to describe items with sufficient particularity). The warrant does not authorize the seizure of all documents and dealings, but only those related to drug trafficking activities as detailed in the affidavit. Thus, the warrant contained a particular description of the things to be seized, so suppression will not be granted on this ground. *See*, *e.g.*, *United States v. Caple*, 403 F. App'x 656, 660 (3d Cir. 2010).

Jones additionally contends that suppression is mandated because the search warrant for 163 Charles Street was issued without probable cause. The applicable

9

standards for issuing and reviewing a search warrant were set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.* at 238-39, 103 S. Ct. 2317 (some alterations in original). Thus, district courts reviewing a magistrate judge's decision to issue a warrant must determine whether the magistrate judge had a "substantial basis" for determining that probable cause existed. *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002) (citing *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993)). While the decision of the magistrate judge should be paid great deference, *Harvey*, 2 F.3d at 1322, district courts should not "simply rubber stamp a magistrate's conclusions." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983).

In determining whether probable cause exists to conduct a search, courts examine the "totality of the circumstances" as set forth in the affidavit. *See United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006). "[P]robable cause is a fluid concept" that turns on "the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006) (citing *Gates*, 462 U.S. at 232, 103 S. Ct. 2317). Under the flexible probable cause standard, the task is to make a practical decision given all the circumstances set forth in the affidavit, including "'the veracity and basis of knowledge of persons supplying hearsay information [that] there is a fair probability that contraband or evidence of a crime will be found at a particular place.'" *Yusuf*, 461 at 390 (quoting *Gates*, 462 U.S. at 235, 103 S. Ct. 2317). Probable cause can be inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal

might hide the fruits of his crime." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (citing *United States v. Jones*, 994 F.2d 1051 (3d Cir. 1993)) (internal quotation marks omitted).

Because the probable cause inquiry "focuses on the relation of criminal conduct to a particular location and not on the activities of any particular person, 'probable cause to arrest does not automatically provide probable cause to search the arrestee's home." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (quoting *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993)). That, though, does not mean that "those facts establishing probable cause to arrest are irrelevant to probable cause to search the arrestee's house. 'If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases.'" *Id*. (quoting *Jones*, 994 F.2d at 1055-56). For that reason, "direct evidence linking the residence to criminal activity is not required to establish probable cause." *Id*. (citations omitted).

The thrust of Jones' argument to suppress is that the affidavit for the search warrant did not establish probable cause to search the "residential unit that is accessed by the second door from the left" at 163 Charles Street. Pointing to the affidavit to search "the second door from the left", Jones notes that the only time he was connected to that specific unit was on February 3, 2016 when law enforcement officials saw him exit that unit. Jones emphasizes that prior to that day, although he was observed on one occasion returning to 163 Charles Street, law enforcement had no idea which of the four units he entered. Jones also points out that prior to February 3, 2016, law enforcement had received no complaints about drug activity taking place at 163 Charles Street. Jones thus asserts that the warrant was issued based entirely on his leaving the second door from the left one time. This, Jones concludes, was insufficient to establish probable cause for the authorized search. I do not agree.

The Third Circuit has "held that evidence is likely to be found where . . . drug dealers reside." *Burton*, 288 F.3d at 103 (citation and alteration omitted).

11

> [E]vidence associated with drug dealing needs to be stored somewhere, and . . . a dealer will have the opportunity to conceal it in his home. After all, a dealer logically could conclude that his residence is the best, and probably the only, location to store items such as records of illicit activity, phone books, address books, large amounts of cash, assets purchased with proceeds of drug transactions, guns to protect drugs and cash, and large quantities of drugs to be sold.

*Id*. at 103-04 (quoting *United States v. Whitner*, 2019 F.3d 289, 298 (3d Cir. 2000)). But while it is reasonable to infer that drug dealers often store evidence of drug crimes in their residences, "application of this inference is based on evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." *Id*. at 104. In *Burton*, the Court of Appeals observed that while it "generally accept[s] the common sense proposition that drug dealers often keep evidence of their transactions at home, that inference is much stronger when the home is the first place a drug dealer proceeds following such a transaction." *Id*. (internal citation omitted).

Sufficient evidence existed as to each of these points here. The affidavit sufficiently detailed that Jones was a drug dealer, as it set forth five (5) transactions where he dealt heroin to the CI. The affidavit explained that the final two (2) controlled purchases were both for two (2) bricks of heroin. This provided the magistrate judge with the necessary predicate to conclude that Jones was a drug dealer.

Adequate information in the affidavit also demonstrated that the second unit from the left at 163 Charles Street was Jones' residence and that there was a link between that residence and Jones' drug activities. More particularly, after the January 27, 2016 controlled buy, Jones immediately proceeded back to 163 Charles Street. While law enforcement officials could not determine at that time which of the residential units Jones entered, they were subsequently able to make the determination that Jones occupied the second unit from the left when he was observed leaving that door immediately prior to the February 3, 2016 controlled buy. These facts provided

sufficient support to show both that Jones resided at the unit second from the left at 163 Charles Street and that there was a fair probability that contraband would be found there. *See Burton*, 288 F.3d at 105; *see also, e.g.*, *United States v. Houser*, - - - F. App'x - - -, 2018 WL 4692328, at *3 (6th Cir. Sept. 28, 2018) ("the warrant affidavit averred that officers witnessed Houser leave from and then return to his apartment immediately before and after selling crack cocaine, thus establishing a sufficient nexus to search the residence."); *United States v. Thorton*, 559 F. App'x 176, 179 (3d Cir. 2014) (evidence that the defendant "was seen entering and exiting this dwelling immediately before and after selling drugs on two separate occasions" along with police officer's opinion that drugs were likely to be found at residence provided a substantial basis for the magistrate judge to conclude that evidence of drug dealing was likely to be found at the residence); *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) ("the affidavit explained that a confidential informant had observed someone come out of Ellison's residence, engage in a drug transaction, and then return into the residence. These incriminating actions are inextricably connected to the residence for which the search warrant was sought. From these actions, the affiant and the issuing judge could infer that there was a fair probability that drugs were being stored in the residence or that drug trafficking was taking place from the residence, such that a search of the residence would be likely to yield contraband or evidence of a crime."); *United States v. Johnson*, 187 F. Supp. 3d 548, 552-53 (M.D. Pa. 2016) ("while the affidavit does not specify that Defendant exited the home immediately prior to the controlled sale buy, sufficient information was provided to the magistrate that could lead him to conclude that Defendant left the residence immediately prior to conducting the controlled drug deal. That, paired with the fact that Defendant had been observed exiting the residence on a separate occasion, could lead the magistrate judge to conclude that there was probable cause to conclude that 416 Berger Street was Defendant's residence."). Evidence seized from the search of 163 Charles Street will not be suppressed.

### III. Conclusion

For the above stated reasons, Jones' pretrial motions to dismiss Counts One and Nine of the Indictment and to suppress will be denied.

An appropriate order follows.

December 12, 2018 /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge